Good morning, Your Honors. Rosemary Guadagnolo on behalf of the defendant, Faure Brothers. May it please the Court. In doing some research on the issue of occurrence in this case, I came across a fairly recent case, not surprisingly from California, that complained that litigation over coverage, especially the issue of occurrence in liability policies, was causing the death of way too many trees. We continue in that trend, unfortunately. Unless the Court prefers otherwise, my intent is to address first the ground on which the Circuit Court relied in granting the insurer's motion for summary judgment. And that was that there was no duty to defend the insured in this case because there had not been an occurrence as defined by the policy. A brief review of the facts, Faure operates a warehouse and purchased liability insurance from UNIC, the insurer. Faure stored and shipped chemicals produced by a customer of the warehouse. A warehouse worker was supposed to put a new label on a container, we'll call it chemical A, and took a label for chemical A and put it on a container for chemical B. The warehouse was then to ship out the container to a customer of the warehouse customer, and that was Henkel, which manufactured an adhesive. Henkel used the chemical in manufacturing the adhesive and shipped to its customers, two customers that made medical devices. When one of the medical device makers noted a problem with the adhesive bond, it wasn't strong enough. When it was discovered that the adhesive had incorporated the wrong chemical, the customer of the warehouse had to pay the adhesive maker, its customer, and the customers of the adhesive maker, the device manufacturers, for the damaged products. The warehouse customer sued the warehouse for the amounts it had to pay, the adhesive maker and the medical device makers. So because the warehouse worker made a mistake in labeling the container, it caused that train wreck. After the warehouse customer paid out to its customers, it turned around and sued Foray Brothers. Foray tendered the defense to the insurer, which refused to defend. Foray had to be responsible for its own defense and ultimately settle the matter. The insurance company later filed an action to declare that it had no duty to defend Foray and no duty to indemnify Foray for what it had paid to settle the whole thing. Now Unik moved for summary judgment on both the issues of the duty to defend and the duty to indemnify, although they seemed to not be squarely separated at times, but that's what they were doing. Unik made three arguments. One, that there was no occurrence as defined by the policy, that there was no property damage as defined by the policy, and that there was a policy exclusion for recall products that applied. Excuse me for interrupting, Ms. Guadnola. Our issue here, I believe, is to determine whether or not there was a duty to defend. Yes, Your Honor. We need not address whether or not there's coverage under the policy. Am I correct? We would agree, very much so, and only to the extent that we needed to address those in our briefs in response did we do so. I will confine myself to the duty to defend on the trial court's basis, which is Would you agree with me that generally an insurance company's duty to defend is usually broader than their duty to pay under the policy? I would strongly agree, Your Honor. And in order to determine that Was this an accident under the terms of the policy? It was an accident, Your Honor. The warehouse worker, as air products charged, was careless and negligent in making this mistake here. And the underlying complaint never alleged that this was intentional or non- or intentional. So it is accidental. It was an accident. Didn't the policy say an occurrence was an accident? Yes, Your Honor. But it doesn't define accidental. No, that we are tossed back into the case law, which is very established in this state going all the way back to 1924, that even if an act was intentional, if the result was not intended or expected, it's not an accident here. So when the warehouse worker made this mistake and put the label A on container B, that was a mistake. It was an accident. And the underlying complaint never alleged that it was anything but negligent. So under that approach, there was an accident. There was an occurrence under the policy. That was the sole ground that the trial court considered here. And because the cases overwhelmingly favor Fauré's position on this, that is the basis for reversing the trial court on the ruling that was made, which was a much narrower ruling than the trial court was asked to make. And on that basis, the only line of cases that the insurance company relied on on the occurrence issue is a line of cases for faulty construction. This is a line of cases that Diamond, Viking, that somebody makes a roof and does a terrible job of it, and then the roof caves in, and the customer complains and sues for breach of warranty, breach of contract, and wants a new roof. And that's a case that falls squarely within the faulty construction line of cases. That the roof maker cannot go to the insurer and say, well, now you have to indemnify me and defend me and indemnify me. But I think as we've pointed out, by going into the facts of this line of cases, they involve the faulty product of the insurer, the insurer made a bad roof, the insurer made a bad school building. And where they diverge is, that may be true, but once that product goes and harms another person or property, even those cases are not applicable. So there's two distinctions here. 4A did not make a faulty product here. 4A made a mistake, and down the line it caused these medical devices to become damaged. We don't have a situation where someone is trying to replace a roof. They're saying, you caused damage to my product, and we're going to sue you or make a claim, which they did. That's what liability policy is for here. It's not the usual run-of-the-mill property damage case, obviously. Well I think it's fair to say that every fact situation has its variations here. But it is certainly not a faulty construction line of cases where the insurer is trying to recover from the insurance company for a faulty product that it made. And that's the distinction that we draw in our briefs. And that is approximately the essence of our argument on the issue of whether there was an occurrence here. If the Court wishes me to address any other issues as raised by the insurance company in its briefs, I would be happy to do so or reserve any further comment on those issues in my remaining time as the Court pleases. Counsel, can I ask you relative to the outboard marine case which says that the Court has to compare the allegations of the complaint to the policy language and then determine if there should be a duty. What was it that the Court did in its ruling relative to the allegations of the complaint or the policy language? Which was it that the Court maybe erred on as far as you're concerned? Did the Court rule that the policy language didn't cover what was contained in the complaint? All we know is what the order said, and that is that there's no duty to defend because there was no occurrence. An occurrence is a defined term in the policy, defined as an accident with some bells and whistles on it. So specifically based on the occurrence? Strictly that, Your Honor. And if the Court would permit me, I will address any additional issues that are raised by the insurance company in my remaining time. Thank you. Good morning. May it please the Court. My name is Jim Horstman. My co-counsel is Melissa Dokich. We represent United National Insurance Company. United National is the plaintiff. I'd like to just briefly address a couple of procedural points here. United National filed its complaint seeking a declaration that it doesn't owe a duty to defend based on three different issues. The occurrence issue, property damage, and exclusion and. We presented our motion for summary judgment on all three, and as has been noted, Judge Hall granted summary judgment looking only to the occurrence issue. The procedural point, though, is that this Court can affirm on any basis presented by the record. That has some particular importance here because Forey Brothers, in its opening brief, didn't talk about property damage at all, didn't talk about exclusion and at all, didn't talk about its challenge in the lower court to United National's affidavits, evidence. The Court granted Forey Brothers a right to file a 35-page reply brief, which was a nice exercise of the Court's discretion. But it doesn't change the point under Rule 341H7 that, quote, points not argued in the opening brief are waived and shall not be raised in the reply brief or oral argument. The procedural point I'm making is that, in our view, Forey Brothers has, in effect, conceded the propriety of the judgment as supported by the property damage argument and exclusion and rule 341H7 couldn't be clearer in our view. The substantive issue, Justice Harris, I think is initially the duty to defend. But from our perspective, of course, the rule is if the Court finds that there's no duty to defend, that necessarily means that there's no duty to indemnify. So in our view, this judgment entered by Judge Hall disposes of the whole case. So initially, it's argued as a duty to defend issue, but the consequence is broader. On the occurrence issue, Forey Brothers' position really rests on two misperceptions regarding the law of what constitutes an occurrence. Forey Brothers subscribes to the beliefs that negligence allegations invariably establish an occurrence. And as a corollary to that, I guess, they find that the absence of intentional conduct allegations also invariably establishes an occurrence. But that isn't right. It isn't true that every time you have negligence allegations, you have an occurrence. And it isn't true that every time there's no intentional conduct allegations, you have an occurrence. The rule is enunciated by this Court in the Illinois Supreme Court, it's a lot more refined. And that is, I think the biggest difference analytically is Forey Brothers is looking to the initial conduct. And she says, well, it was accidental. This guy didn't mean to mislabel the container, sure enough. But Illinois law looks not just to the conduct, but to the consequence, the result of it. And so in our brief, we cite the rule that straightens this out, really. And it is more refined, and it's that even if the actor did not expect or intend the result, still, if the result was reasonably foreseeable, then you don't have an accident or occurrence. So that- Are you aware of Rich v. Principal Life Insurance by our Supreme Court? I don't believe it was cited. I don't recall it. Well, therein, I believe the Supreme Court set forth that an accident is one where the injury, the focus is on whether the injury was expected or intended by the insured, not whether the insured's acts were performed intentionally. And I believe that case is quite specific as to defining whether an occurrence is an accident. Well, an occurrence is an accident. Certainly, the policy defines an occurrence as an accident. But I think the case law has refined it. You cited a life insurance case. So obviously, we're talking about a slightly different policy definition. But I think the flow and the drift of the Illinois Supreme Court cases and the First District cases is that an accident is something that cannot be anticipated. And if the ordinary and natural consequences of an act can reasonably be seen to produce a certain result, then it's not an accident. The courts have looked to the consequences, not the mental state of the act. You said, respectfully, you're indicating that an accident is, say again, it's something that can't be, cannot be anticipated? No. An accident, I can read it verbatim. Even if the actor did not intend or expect the result, if the result is the ordinary and natural consequence of the act, then it's not an accident. So even if a course of events begins with a negligence, if you can tell what the natural and ordinary consequence of that would be, it's not an accident because it's a foreseeable event then. That's the drift of it. And isn't that why people buy insurance? Well, in all fairness, I think the Elger Court, the Supreme Court in Elger, gets right to this point and they say, you know, if we let a CGL policy provide coverage for reasonably foreseeable results, that would be the equivalent of a performance bond. And the Supreme Court said there's a difference between performance bonds and CGL policies. So I think although Elger is really cited more as a property damage case, they get into this explanation of what the nature of a CGL policy is. Counsel said that the only case the United National can cite in support of its occurrence argument are construction site cases, and that's not true at all. The great granddaddy of all the occurrence cases is Hamilton Dye. And that's very similar to our case. In Hamilton Dye you had the manufacturer insured produced a racket component of tennis rackets, and they produced one that was too weak and the metal wasn't dense enough. And the court in Hamilton Dye, which has been cited probably by a thousand cases in this court, said that you don't have property damage through the mere incorporation of a defective component. In this case there was no doubt the rackets were defective. They were too weak to be used. But even though the rackets were put together with the webbing and whatever else you put on a tennis racket, the court said that's not property damage. Counsel, let me ask you a question. This was a granting of motion for summary judgment, so there's no issue of fact the court found. So as a matter of law, if the court ruled there was no occurrence, is that right? Correct. So what was this? I mean, what kind of insurance policy would cover this? I'm trying to get that straight in my head. I mean, what happened here? There was a mislabeling. It's a general liability. What do you call this whole matter? Is there any insurance policy that could cover this kind of thing? Well, there are some. I mean, it's outside this record. I understand. I'm just trying to get it straight. There are warehousement policies that specifically cover the types of risks that are attendant to warehouse operations. Potentially, you could have a bond, which I think is the point that the elder court got to. Okay. Let me ask you one more question. The law also says that it must be clear from the complaint that the allegations take effect that bring the case within or potentially within the coverage, but you don't see that there's any potential possible coverage whatsoever because there's no occurrence. Right. Correct. No occurrence, and although counsel, again, has chosen not to go into it, so I won't take up the Court's time, no property damage and exclusion and applies by its terms. So based on the procedural points I made and based on the substantive issue and the record supporting Judge Hall's ruling, we ask the Court to affirm the summary judgment. It would be a very unusual and illogical application of Rule 341 to expect the appellant to anticipate everything that the appellee would like to rely on in an appeal. As far as the appellant is concerned, an appellee may not wish to ask for affirmance on some other basis, and to suggest that it is our duty to anticipate each and every one of those grounds would be that misapplication, and there was no concession, obviously, of those arguments. The Hamilton die case appears to be cited by counsel with respect to the property damage issue, so I'll touch on it. In Hamilton die cast, they said no property damage there because there was no physical harm to the other parts of the tennis racket. Another faulty construction case, but this time of a tennis racket. Well, in this case, the mistake that the foray worker committed ruined the adhesive, which in turn ruined the medical devices, and therefore there certainly was physical harm to those. The entire argument assumed by the insurance company assumes that the warehouse worker knew what it had done, and deliberately perhaps mislabeled a container. That's different from a shoddy roof construction company that knows by the nature of the materials it uses and the practices it has, that it is cutting corners. That is very, very different. For that reason, Your Honor, we would respectfully request that the ruling of the circuit court be reversed as to the insurance company's motion for summary judgment, and that foray's motion for summary judgment on that issue be granted, that there was an occurrence. Now, to be honest with you, that doesn't close the question of whether there was a duty to defend, because there's another ground or two, and that would have to go back to the circuit court. So on that limited basis, we would ask that the judgment be reversed and partial summary judgment be granted in favor of foray on the issue of whether there was an occurrence. I thank you. Thank you very much.